CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 18 2016

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Case No. 7:15CR00074 |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| PIERCE YARNELL BROWN, | ) |
| | ) By: Hon. Glen E. Conrad |
| Defendant. | ) Chief United States District Judge |

On August 13, 2015, a grand jury charged defendant Pierce Yarnell Brown in a single-count indictment for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). This case is presently before the court on Brown's motion to suppress. For the reasons set forth below, the motion will be denied.

## Background

On July 8, 2015 at around 7:30 p.m., Sergeant Robert McNiff of the Roanoke City Police Department was on routine patrol in an area that had been previously designated as a drug market. Sergeant McNiff observed Brown, who was driving a moped, engage his right turn signal. Brown then moved into the left lane and turned left at an intersection. Sergeant McNiff also noticed that Brown's brake light was not working properly; the light "flashed continuously in a manner similar to that of a strobe light." United States' Br. in Opp'n to Mot. to Suppress ¶ 1, Docket No. 25. Based on these traffic and equipment violations, Sergeant McNiff activated his lights to order Brown to pull over. Brown then drove onto private property and, according to Brown, parked his moped either in the driveway or on the front yard of the property.

Sergeant McNiff approached Brown and asked him to identify the owner of the property. Brown hesitated but then gave the name "Libra." Def.'s Mem. in Supp. of Mot. to Suppress at 2, Docket No. 33. At the time, Brown was "extremely nervous," his voice "quavered," and his

"body movements were shaky." United States' Br. in Opp'n to Mot. to Suppress ¶ 2, Docket No. 25. Sergeant McNiff also saw Brown reach for his pocket. Sergeant McNiff then patted down Brown and felt a "baggie containing a soft material" in the same pocket that Brown had been reaching towards. Id. Sergeant McNiff asked Brown if the item was marijuana; Brown admitted that it was. Sergeant McNiff then removed the bag from Brown's pocket and confirmed that it contained marijuana.[1] After this discovery, Brown continued to be extremely nervous and started to "sweat profusely." Id. ¶ 3. At this point, Sergeant McNiff placed Brown in handcuffs and had him sit about fifteen feet away from the moped. Sergeant McNiff then learned that Brown was driving after being declared a habitual offender, a criminal offense under Virginia Code § 46.2-357.

Sergeant McNiff retrieved the key to the moped from Brown, opened a locked compartment under the seat of the moped, and searched inside. Sergeant McNiff then discovered a fully loaded .38 caliber revolver in the compartment, as well as additional marijuana, digital scales, and a marijuana grinder. Brown admitted that he found the revolver in a field on the Fourth of July. He also admitted that he was a convicted felon. Thereafter, Sergeant McNiff arrested Brown and had the moped towed away by a wrecker driver.

On August 13, 2015, a grand jury charged Brown in a single-count indictment for possession of a firearm by a convicted felon. On October 29, 2015, Brown filed a motion to suppress all evidence seized from the search of his moped and a motion to continue the jury trial, which was originally scheduled for November 10, 2015. The court held a hearing on both motions on December 14, 2015. Based on the arguments at the hearing, the court indicated that it

---

[1] The parties dispute the size of the bag of marijuana found on Brown. As discussed further in the next section, the court does not believe that the size of the bag is material for purposes of the instant motion. However, the government appears to concede, for the sake of argument, that the bag of marijuana was a smaller, user-sized bag.

would give Brown's counsel ten days to file a supplemental motion to suppress and ten days for the government to respond. Thereafter, the court granted the motion to continue. The matter has been fully briefed and is ripe for disposition.

## Discussion

The government contends that the evidence discovered from the search of Brown's moped was valid under the automobile exception. Even if the court holds that the search was invalid, the government also argues that the evidence is admissible under the inevitable discovery doctrine. The court will address each argument in turn.

I. **Automobile Exception**

The Fourth Amendment affords "[t]he rights of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches are "per se unreasonable under the Fourth Amendment—subject to only a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). One such exception is the automobile exception. Carroll v. United States, 267 U.S. 132, 153-54 (1925). Under this doctrine, a police officer may conduct a warrantless search of a vehicle "[i]f [it] is readily mobile and probable cause exists to believe it contains contraband" or evidence of a crime. United States v. Brookins, 345 F.3d 231, 235 (4th Cir. 2003) (quoting Maryland v. Dyson, 527 U.S. 465, 466 (1999)). While conducting a warrantless search of a vehicle, law enforcement officers are permitted to search "every part of the vehicle and its contents that may conceal the object of the search." United States v. Ross, 456 U.S. 798, 825 (1982). In addition, officers may also search containers found in the vehicle if they have probable cause to believe that the object of the search could be found in such containers. California v. Acevedo, 500 U.S. 565, 580 (1991). Probable cause is present when there is a "fair

3

probability that contraband or evidence of a crime will be found in a particular place" based on an officer's common sense and experience. Illinois v. Gates, 462 U.S. 213, 238 (1983). It is to be determined by examining the totality of the circumstances, United States v. Dickey-Bey, 393 F.3d 449, 453 (4th Cir. 2004), viewed from the standpoint of an objectively reasonable police officer, Ornelas v. United States, 517 U.S. 690, 696 (1996). See also United States v. Valentine, 517 F. Supp. 2d 816, 821 (W.D. Va. 2007) ("[T]he question is whether a reasonable officer would have concluded that she had probable cause to believe a search of the vehicle would yield contraband or evidence of a crime.").

In this case, Brown does not dispute that he was properly stopped for traffic and equipment violations. He also concedes that the marijuana would have been discovered on his person upon his arrest for driving after being declared a habitual offender. However, Brown contends that Sergeant McNiff did not have probable cause to search his moped. Specifically, Brown argues that the marijuana in his pocket was a user amount, and that the discovery of the drugs alone, without other evidence that Brown was involved in drug trafficking, was insufficient to establish probable cause to search his moped. In response, the government argues that Sergeant McNiff had probable cause to search the moped based on the totality of circumstances. These circumstances included Brown's extreme nervousness, his profuse sweating, his repeated movements towards his pocket, his presence in a high-crime area, and—most importantly—the bag of marijuana found on his person.

Both parties cite to United States v. Baker, in which the United States Court of Appeals for the Fourth Circuit found that a police officer had probable cause to search the defendant's vehicle for additional contraband after "having found drugs, as well as other items indicating involvement in the drug trade," on the defendant's person. 719 F.3d 313, 319 (4th Cir. 2013).

4

Brown appears to argue that probable cause to search a vehicle for contraband exists only when there is evidence discovered on a suspect's person that indicates his or her involvement in drug trafficking. The court is constrained to disagree with this narrow reading of Baker. The Fourth Circuit in Baker explicitly held that the probable cause is satisfied "when a police officer lawfully searches a vehicle's recent occupant and finds contraband on his person." Id. The Court also cited to another case where the United States Court of Appeals for the Seventh Circuit found that a police officer's "discovery of a banned substance (drugs) on [the defendant's] person clearly provided [the police officer] with probable cause to search the trunk of the vehicle." United States v. Johnson, 383 F.3d 538, 545 (7th Cir. 2004). Furthermore, this court has previously found that a police officer had probable cause to search a vehicle "[w]here a driver has been found to have contraband on his person[.]" Cooper v. Worsham, No. 4:07CV00032, 2007 WL 4106456, at *5 (W.D. Va. Nov. 19, 2007). The court also notes that the Fourth Circuit has held that even the smell of marijuana, on its own, established probable cause. See United States v. Kellam, 568 F.3d 125, 136 (4th Cir. 2009) (upholding a search based on probable cause when the officer smelled marijuana); United States v. Scheetz, 293 F.3d 175, 184 (4th Cir. 2002) (same). Therefore, the court concludes that a finding of probable cause does not require additional evidence that the defendant is involved in drug trafficking. In this case, the court finds that totality of the circumstances—the discovery of marijuana in Brown's pocket, coupled with Sergeant McNiff's observations about Brown's behavior and his presence in a high-crime area—established a fair probability that contraband would be found in the moped's compartment. See United States v. Muti, No. 4:09-CR-41-FL1, 2009 WL 3296091, at *3 (E.D.N.C. Oct. 13, 2009) (finding probable cause to search a vehicle based on the smell of marijuana, defendant's nervous behavior, presence in a high-crime area, and the officer's training and experience). Therefore, the

5

court finds that Sergeant McNiff had probable cause to search Brown's moped. Accordingly, the court will deny Brown's motion to suppress on that ground.

II. **Inevitable Discovery**

Even if the court could find that Sergeant McNiff did not have probable cause to search Brown's moped under the automobile exception, the court finds that the police department would have inevitably discovered the firearm once the moped was subjected to an inventory search. "Generally, the exclusionary rule provides that evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." United States v. DeQuasie, 373 F.3d 509, 519 (4th Cir. 2004) (internal quotation marks omitted). However, under the inevitable discovery exception to the exclusionary rule, evidence that is illegally seized is admissible if the government can prove "by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." Nix v. Williams, 467 U.S. 431, 444 (1984). "A routine inventory search policy may serve as the basis for admission of evidence under the inevitable discovery doctrine." United States v. McCullum, 469 F. App'x 194, 197 (4th Cir. 2012) (citing United States v. George, 971 F.2d 1113, 1121 (4th Cir. 1992)). In order for the inventory search exception to apply, "the search must have been performed pursuant to standardized criteria—such as a uniform policy—and such criteria must have been administered in good faith." Id.

Brown argues that the inevitable discovery doctrine does not apply in this case because the firearm would not have been discovered consistent with the Roanoke City Police Department's written policies. Specifically, Brown argues that Sergeant McNiff had to get

6

consent from either Brown or the owner of the property, as well as approval from a supervisor,[2] before he could tow Brown's moped. The Fourth Circuit, however, has held that a vehicle is in lawful custody if the police officer's decision to impound the vehicle is reasonable under the circumstances. United States v. Brown, 787 F.2d 929, 932-33 (4th Cir. 1986).

Had Sergeant McNiff not discovered the firearm under the automobile exception, the court finds that it would have been reasonable for him to tow Brown's moped under the circumstances in this case. First, because of his arrest for driving after being declared a habitual offender, Brown would not have been able to drive the moped himself. Second, although Sergeant McNiff did not attempt to ask the owner of the property for permission to tow the moped, it was reasonable for him to believe that no one was home because the traffic stop took a lengthy period of time and no one emerged from the residence during that time. Moreover, Brown's association with the residence was "vague and unsubstantiated" based on the information he provided to Sergeant McNiff. United States v. Engle, 677 F. Supp. 2d 879 (E.D. Va. 2009); see also Brown, 787 F.2d at 932-33 (finding that the police officer's decision to tow the vehicle was reasonable given the officer's skepticism about the residence). Third, Brown admits that the moped was parked in either the property's driveway or on the front yard of the residence. If Sergeant McNiff had left the moped in either location, the court believes that the moped would have been a nuisance for the owner of the private property. See Brown, 787 F.2d at 932 ("[T]he police officer in this case could reasonably have impounded [the defendant's] vehicle either because there was no known individual immediately available to take custody of the car, or because the car could have constituted a nuisance in the area in which it was

---

[2] The court notes that Sergeant McNiff, by virtue of his rank, is a supervisor. See White v. Chapman, No. 1:14-cv-00848, 2015 WL 2740482, at *2 (E.D. Va. Apr. 6, 2015) (noting that, during a traffic stop, the sergeant indicated that he was the supervisor). Therefore, he was not required to obtain approval from a supervisor before towing Brown's moped. Moreover, the police department's policy explicitly states that only "officers" are required to first obtain supervisory approval. Gov. Ex. 2 at 3.

7

parked."). Fourth, it appears that Brown did not inform Sergeant McNiff as to any individual who could take immediate possession of the vehicle, so it was reasonable for Sergeant McNiff to believe that there was no such individual. Fifth, if Sergeant McNiff had left Brown's moped on the property, there was a risk that the vehicle could have been stolen or damaged, which goes against the policy reasons for inventory searches. United States v. Sellers, 512 F. App'x 319, 325 (4th Cir. 2013). ("[A]n inventory search serves to protect the detainee's property, and also protects the police from accusations of theft and from potentially dangerous items."). Finally, despite Brown's arguments as to what Sergeant McNiff should have done with his moped, the existence of a less intrusive means of conducting a search does not render the search unreasonable so long as the circumstances indicate that the officer's actions were reasonable. Illinois v. Lafayette, 462 U.S. 640, 647 (1983). In sum, the court finds that Sergeant McNiff acted reasonably in towing Brown's moped.

Furthermore, the government presented evidence that the Roanoke City Police Department has a written policy for conducting inventory searches on impounded vehicles that includes a search of all compartments and containers. Pursuant to this policy, officers can also search locked compartments and containers within the vehicle. Given the finding that towing Brown's moped would have been reasonable under the circumstances, the court also finds that the towing would have triggered an inventory search of the moped and the inevitable discovery of the firearm in the compartment. See McCullum, 469 F. App'x at 198 (finding that, pursuant to the police department's policy, "the towing of the Cadillac would have triggered an inventory search of the truck regardless of whether probable cause for the search of the truck existed or not"). Therefore, the court finds that the government has met its burden of showing, by a preponderance of the evidence, that the firearm would have been inevitably discovered during an

inventory search of the moped. Accordingly, the court also denies Brown's motion to suppress on that ground.

## Conclusion

For the foregoing reasons, the defendant's motion to suppress will be denied. The Clerk is directed to send certified copies of the memorandum opinion and the accompanying order to all counsel of record.

DATED: This 18th day of February, 2016.

_____
Chief United States District Judge